IN  THE  UNITED  STATES  DISTRICT  COURT
FOR  THE  SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION  AT  DAYTON

KRISTI OILER,                                                     :

                                                                          Case No. 3:10-cv-348
                              Plaintiff,

                                                                          District Judge Walter Herbert Rice
                                                                          Magistrate Judge Michael R. Merz

          -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                              Defendant.            :

## REPORT AND RECOMMENDATIONS

          Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the

final decision of Defendant Commissioner of Social Security (the "Commissioner") denying

Plaintiff's application for Social Security benefits. The case is now before the Court for decision

after briefing by the parties directed to the record as a whole.

          Judicial review of the Commissioner's decision is limited in scope by the statute

which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether

the record as a whole contains substantial evidence to support the Commissioner's decision.  The

Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);  *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423.  To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on February 24, 2004, alleging disability from September 1, 2000[1], due to pain in the muscles of her hips, back, neck, shoulders, legs and feet, irritable bowel syndrome, depression, anxiety, and daily fatigue. *See* Tr. 73-75; 77.  The Commissioner denied Plaintiff's application initially and on reconsideration. *See* Tr. 54-62. Administrative Law Judge Melvin A. Padilla held a hearing, (Tr. 616-58), and subsequently determined that Plaintiff is  not disabled.  (Tr. 17-35). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she met the

---

[1]Plaintiff alleged disability since September 1, 2000, on her initial application for benefits. (Tr. 73). In the initial Disability Report, Plaintiff reported that she became unable to work on February 18, 2004. (Tr. 77).

insured status requirements of the Act through June 30, 2009.  (Tr. 21, ¶ 1).  Judge Padilla also found that Plaintiff has severe lumbar degenerative disc disease, possible fibromyalgia, depression, and anxiety disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings.  *Id.*  ¶  3, Tr. 24, ¶ 4.  Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of  light work. (Tr. 25, ¶ 5).  Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing.  (Tr. 33, ¶ 10).  Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act at any time from February 18, 2004, through March 24, 2008. (Tr. 34, ¶ 11).

Plaintiff was involved in a motor vehicle accident in May, 1984, and she was knocked down and backed over by her car. (Tr. 182-95).  Plaintiff sustained multiple fractures of the ribs and transverse processes of her lumbar vertebrae, a right pneumothorax, and multiple abrasions and contusions. *Id.*

The record contains a copy of treating physician Dr. Leisring's office notes dated January 15, 1995, to October 16, 2007. (Tr. 211-33, 496-547, 569-74).  In June 1995  Dr. Leisring noted that while Plaintiff had some degenerative changes in her thoracic spine, she also had myofascial pain with trigger points on examination. (Tr. 230).  Dr. Leisring treated Plaintiff with pain, anti-inflammatory, and anti-depressant medications. (Tr. 212-30).

Plaintiff attended eight physical therapy sessions in January and February, 1995, for treatment of left trapezius and scapular strain. (Tr. 198-99).  At the time Plaintiff completed treatment, the therapist noted Plaintiff had met all short and long term goals. *Id.*

The record contains Plaintiff's treatment notes dated May 200l to March 2003 from Samaritan Family Care where Plaintiff received treatment  primarily from Dr. Mark Rorrer. (Tr. 387-408). Those notes reveal that Plaintiff received treatment for general complaints including sinus problems, chronic pain, chronic constipation, and trochanteric bursitis. *Id.* Dr. Rorrer treated Plaintiff with various medications. *Id.*

Plaintiff attended physical therapy at Miami Valley Hospital from October 2002 through February 2003 and again in June and July 2004. (Tr. 277-94). The therapist noted that Plaintiff's progress from therapy has been limited and that she had little lasting benefit. *Id.*

The record contains Plaintiff's treatment notes dated January 24, 2003, through August 18, 2004, from  Dayton Pain and Preventative Medicine where Plaintiff received treatment from Dr. Rorrer and Dr. Moore on January 24, 2003.  (Tr. 314-57).   Initially, it was noted that Plaintiff complained of lumbar and bilateral hip pain. (Tr. 349).  When he initially examined Plaintiff, Dr. Moore reported that she had fourteen of eighteen trigger points and he identified Plaintiff's diagnoses as fibromyalgia and chronic low back pain. *Id.*  Dr. Rorrer reported on February 10, 2003, that Plaintiff had a "nearly" normal spinal range of motion, normal neurological findings, normal strength, and fourteen of eighteen fibromyalgia syndrome tender points; he identified Plaintiff's diagnosis as fibromyalgia. *Id.*  Plaintiff's treatment consisted of pain medications and trigger point injections.  *Id.*

On February 23, 2004, Dr. Rorrer reported that Plaintiff met the American Rheumatological clinical testing criteria for fibromyalgia.. *Id*. Dr. Rorrer identified twenty-three symptoms that Plaintiff experienced, including but not limited to multiple tender points, nonrestorative sleep, chronic fatigue, and depression and that Plaintiff experienced pain  throughout

the lumbosacral, thoracic and cervical spine, shoulders, hands/fingers, hips, legs, and knees/ankles/feet. *Id.* Dr. Rorrer further reported that Plaintiff's pain frequently interfered with attention and concentration. *Id.* Dr. Rorrer opined that Plaintiff had a marked limitation in her ability to deal with work stress, and that side effects of medication, including sedation, nausea, and lightheadedness, might have implications for working. *Id.* Dr. Rorrer also opined Plaintiff was able to sit and stand/walk each for less than two hours, that she would need to shift positions at will from sitting, standing, or walking, and that she might need to lie down at unpredictable intervals. *Id.* Dr. Rorrer opined further that Plaintiff was not able to tolerate prolonged sitting, was not able to lift more than ten pounds occasionally, and that she would likely miss work more than three times a month due to her impairments. *Id.*

Examining psychologist Dr. Olson noted in April 2004 that Plaintiff drove, cooked, did the dishes, shopped, cleaned the house with her husband, socialized with friends, home schooled her daughter, and put her children to bed. (Tr. 240-45). *Id.* Dr. Olson also noted that Plaintiff reported that she obsessively picked at her skin until it scarred, her energy level for activities was very low, that she experienced crying spells, and that she cried a number of times during the clinical interview. *Id.* Dr. Olson reported that Plaintiff's mood seemed depressed and tearful, her abstract reasoning appeared average, she appeared to rely on her husband for money management and some household management, her interpersonal interactions were somewhat restricted, and that her insight was minimal although her judgment was intact. *Id.* Dr. Olson proffered a number of rule out diagnoses, including obsessive compulsive disorder and a bipolar II disorder. *Id.* Dr. Olson identified Plaintiff's diagnoses an impulse control disorder based on her skin picking and personality disorder with histrionic and borderline features, and he assigned Plaintiff a GAF of 56.

6

*Id.* Dr. Olson opined Plaintiff's abilities to relate to others and to withstand the stress and pressure of day to day activities were moderately impaired and her abilities to understand, remember and follow instructions and to maintain attention and concentration were unimpaired. *Id.*

Plaintiff received mental health treatment at New Creation Counseling Center in June and July 2004. (Tr. 410-18). In August, 2004, Plaintiff's initial therapist reported that Plaintiff's cognitive functioning appeared to be in the normal range, that she suffered from cognitive distortions and rigid thinking, and that she had poor insight. *Id.* The therapist also reported that Plaintiff showed aggressive behavior at times associated with anger outbursts. (Tr. 362-66). Plaintiff switched therapists, noting that she needed to see a psychiatrist as the social worker "may not have credentials needed by Social Security Administration." (Tr. 410). She saw her new therapist six times from July through October 2004. (Tr. 419-20). The treatment notes reflect counseling for issues of marital discord. *Id.*

In August, 2004, Dr. Leisring reported that Plaintiff's impairments substantially limited a majority of her life activities. (Tr. 358-59). Dr. Leisring opined that Plaintiff's impairments interfered with her ability to perform activities of daily living consistently, her multiple medications could cause significant side effects, including drowsiness and lack of mental clarity, and that she had components of anxiety and depression, which would affect her work. *Id.* Dr. Leisring concluded that Plaintiff's clinical condition was chronic and unlikely to improve significantly in the near future. *Id.*

An April 17, 2005, MRI of Plaintiff's lumbar spine revealed spondylolisthesis at L4 and degenerative narrowing and disc protrusion at L3-4. (Tr. 472-73). I

In April and June 2005, Dr. Moore reported that Plaintiff had a normal heel walk,

7

normal reflexes, and normal straight leg raising. (Tr. 427, 430-31).

The record contains seven treatment notes from psychologist Dr. Boerger dated May 19, 2005, to September 12, 2005. (Tr. 454-71). Dr. Boerger treated Plaintiff for her complaints of depression and anxiety and he noted that even though Plaintiff was anxious and depressed, she also had a positive attitude and stated she felt better. (Tr. 454-63).

Consulting neurologist Dr. Kitchener performed an EMG and nerve conduction studies of Plaintiff's lower extremities in March 2006 which revealed some non-specific denervation in the left lower lumbar paraspinal muscles, and no evidence of neuropathy, polyneuropathy, or myopathy. (Tr. 432-34). A lumbar spine MRI performed in January, 2007, revealed disc protrusions at L3-4 and L4-5 with some minimal compression of the exiting right-sided L4 nerve root, osteoarthritis, and a disc bulge at L2-3. (Tr. 436-37). Dr. Kitchener reported  that Plaintiff probably had fibromyalgia, given her complaint of diffuse pain, and he referred Plaintiff to a pain specialist. (Tr. 494-95).

Plaintiff was evaluated at Miami County Mental Health on November 28, 2006. (Tr. 484-87). At that time, it was noted that Plaintiff was cooperative and oriented, her memory was intact, she had a stable affect and pleasant mood,  normal thought content, and her insight and judgment were good. *Id.*  It was also noted that Palitniff denied suicidal ideations and hallucinations. *Id.*  The evaluator identified Plaintiff's diagnosis as major depressive disorder, recurrent, moderate and the evaluator assigned Plaintiff a GAF of 60. *Id.* Plaintiff was evaluated again on January 25, 2007, at which time Plaintiff's husband stated she was suicidal. (Tr. 480-83).  It was noted that Plaintiff reported she sometimes thinks about suicide, but would never act on her thoughts because of her children. *Id.*  It was also noted that Plaintiff was cooperative and oriented, her memory was

8

intact, she had a restricted affect and an uncomfortable mood, normal thought content, and her insight and judgment were fair. *Id.* The evaluator identified Plaintiff's diagnosis as a mood disorder due to general medical condition with borderline personality traits. *Id.*

Dr. Boerger examined Plaintiff in January, 2007. (Tr. 447-53). He noted that Plaintiff reported that she had worked 10-15 hours a week at Meijer's department store since May 2006, she cooked a little, home schooled her daughter, went to church every Wednesday, and shopped. (Tr. 448-51). Dr. Boerger noted further that Plaintiff reported that she had been depressed all her life and she experienced crying spells a couple of times a week, she did not have much interest in things, nor did she have the energy or motivation to take care of household chores, and that she continued to compulsively pick at her skin. *Id.* Dr. Boerger reported that Plaintiff had noticeable marks on her skin, that she was cooperative, her affect was appropriate, she was depressed, had some suicidal thoughts but no plan, was occasionally anxious, had panic attacks, had no hallucinations or delusions, was alert, had no problems with memory, and that her insight and judgment were intact. *Id.* Dr. Boerger identified Plaintiff's diagnoses as a dysthymic disorder, a panic disorder, impulse control disorder, and a personality disorder with histrionic features. *Id.* Dr. Boerger assigned Plaintiff a GAF of 48-50. *Id.* Dr. Boerger opined that Plaintiff's ability to understand, remember and follow instructions was mildly impaired, her ability to relate to others was mildly to moderately impaired, her ability to maintain attention and concentration for simple repetitive tasks was mildly impaired, and her ability to withstand the stress and pressure of day to day activities was moderately to markedly impaired. *Id.*

On April 11, 2007, Dr. Leisring reported that Plaintiff's chronic low back pain, allergic complaints, insomnia, anxiety, depression and fatigue prevented her from working. (Tr.

548-49). Dr. Leisring also reported that Plaintiff's chronic low back pain was significant and had been "deemed out of proportion to her documented physical abnormalities. However, I do feel that's not at all unusual. I indeed believe that her pain state is severe." *Id.* Dr. Leisring opined that Plaintiff's chronic pain, emotional distress with anxiety, and depression form a cumulative burden of illness which has greatly affected Plaintiff's quality of life. *Id.* Dr. Leisring continued that plaintiff was unable to work, had difficulty caring for her children, and had marital discord all related to her health problems. *Id.* Dr. Leisring concluded that he "remained optimistic that through concurrent care we will be able to improve her quality of life." *Id.*

Plaintiff treated with pain management specialist Dr. Reddy from April 2007 to September 2007. (Tr. 585-609). Plaintiff saw Dr. Reddy about once a month for epidural blocks and medications, as well as a TENS unit. *Id.*

Plaintiff was evaluated on April 28, 2007, at Miami County Mental Health. (Tr. 562-64). Plaintiff was admitted to the inpatient psychiatric unit of Dettmer Behavioral Health Care Services because she had suicidal ideations with a plan. (Tr. 575-84). At the time she was admitted, it was noted that Plaintiff was alert and oriented, her affect was tense, she denied hallucinations, paranoid ideations and delusions, her thought processes were logical and goal-directed, her thought content was focused on her depression, and her insight and judgment were poor. *Id.* Plaintiff's diagnoses were identified as major depressive disorder, anxiety disorder, and possible obsessive compulsive disorder, and she was assigned a GAF on admission of 30. *Id.* Plaintiff was treated with an adjustment in medications and within a few days, Plaintiff noted substantial improvement in her mood. *Id.* Plaintiff was discharged with a GAF of 60-70. *Id.*

Examining psychologist Dr. Bonds noted on June 1, 2007, that Plaintiff reported she

was fired from her most recent part-time job because her health problems were affecting her job performance, that she had a problem with tardiness,  she cooked, cleaned up after her son, shopped for groceries, went for short walks, socialized with a friend and a neighbor, went out to eat,  did scrap booking, went to church twice a month, home schooled her daughter, took her daughter horseback riding and to camp, drove her son to school, and went to the library. (Tr. 550-61).  Dr. Bonds also noted that Plaintiff reported  she was depressed most of the time and thought about suicide, but would not carry through because of her children. *Id.*  Dr. Bonds reported that Plaintiff had some understanding of her problems but not much insight, her mood was depressed, her affect was broad and appropriate, and that she did not exhibit a sense of grandiosity or elevated mood or psychomotor retardation or agitation. *Id.* Dr. Bonds identified Plaintiff's diagnoses as major depressive disorder, severe, generalized anxiety disorder, and a somatoform disorder and he assigned Plaintiff a GAF of 50. *Id.*  Dr. Bonds opined that Plaintiff's ability to relate to others was mildly impaired, her ability to understand, remember and follow instructions was unimpaired, her ability to maintain attention and concentration was moderately impaired, and her ability to withstand the stress and pressure of day to day activities was severely impaired. *Id.*

Plaintiff sought emergency room  treatment  on June 2, 2007, for complaints of back pain which she rated 10/10. (Tr. 566-58).  It was noted that  movement increased Plaintiff's pain and that she needed help out of a wheelchair. *Id.* It was also noted that Plaintiff had normal strength, no sensory deficits, and good motion of the upper extremities. *Id.*  Plaintiff was treated with medications and released. *Id.*

At the administrative hearing, the medical adviser (MA) engaged in a lengthy description of the psychological record.  (Tr. 641-51).  The MA testified that since the end of 2006

or beginning of 2007, Plaintiff's psychological condition had worsened due to psychosocial stressors and that Plaintiff did not meet or equal the Listings. *Id.* The MA also testified that Plaintiff was able to do simple tasks that did not involve a lot of math skills and which required casual contact with supervisors and coworkers, and occasional contact with the public. *Id.*. The MA testified further that she (the MA) was not considering the combined impact of Plaintiff's mental and physical problems. *Id.* The MA further testified that some of Plaintiff's symptoms, such as difficulty concentrating and thinking, had been attributed to side effects of medication. (Tr. 649).

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to give controlling weight to Dr. Rorrer's opinion, and by failing to consider her impairments in combination. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic

techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"

*Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security

Ruling[2] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

opinion of a treating source if it is not well-supported by medically acceptable clinical and

laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case

record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If

the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how

much weight is appropriate by considering a number of factors, including the length of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and

any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at

544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ

to 'always give good reasons in [the] notice of determination or decision for the weight' given to

the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

§404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and

must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d

at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the

two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

> understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge Padilla rejected Dr. Rorrer's opinion on the bases that Dr. Rorrer did not support his opinion with any objective medical evidence or clinical findings and that it was inconsistent with the other evidence of record. (Tr. 25). Judge Padilla recognized that Dr. Rorrer was a pain management specialist, and not an orthopedic or neurologic specialist, who would be more focused on determining an objective basis for Plaintiff's pain. *Id.*

As noted above, Dr. Rorrer essentially opined in February 2004 that Plaintiff had fibromyalgia based on his finding fourteen of eighteen tender points in January 2003. (Tr. 316). Dr. Rorrer opined that Plaintiff was able to sit and stand/walk each for less than 2 hours, she needed a sit/stand/walk option, she could occasionally lift up to 10 pounds, and that she would be absent more than 3 times a month. (Tr. 318- 19). However, Dr. Rorrer's opinion is inconsistent with his own examination findings. For example, when Dr. Rorrer examined Plaintiff on February 10, 2003, he

14

found normal spinal range of motion, normal neurological findings, and normal strength. (Tr. 343-44).   Indeed, Dr. Rorrer's records are primarily a recitation of Plaintiff's subjective complaints. Further, although Dr. Rorer opined that Plaintiff is disabled, he provided few objective findings to support his opinion.

Essentially, Plaintiff's position is that fibromyalgia causes pain yet there are few, if any, objective findings and therefore the Commissioner's reliance on the absence of objective findings is fatal to the Commissioner's findings.

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted).

First, this Court notes that Judge Padilla did find that possible fibromyalgia was a severe impairment. (Tr. 21). Even though Plaintiff was diagnosed with fibromyalgia by Dr. Rorrer, the mere diagnosis of this condition does not necessarily lead to a conclusion of disability. *Vance v. Comm'r of Soc. Sec.*, 206 F. App'x 801, 805, 2008 WL 162942, at **4 (6th Cir. Jan. 15, 2008)(citing *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)). It is also true that a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*,

15

925 F.2d 146, 151 (6th Cir.1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).

Judge Padilla's conclusion that Dr. Rorrer's opinion was based on Plaintiff's subjective complaints is accurate, where the opinion contains twenty three check marks of possible symptoms, without a narrative basis or report of actual observation. (Tr. 316 ). *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted physician's opinion where claimant's subjective complaints unsupported by objective findings); *Young v. Secretary of Health and Human Services*, 925 F.2d at 151 (opinion that does no more than repeat a claimant's allegations is not well supported and does not merit controlling weight).

The record shows that Judge Padilla carefully reviewed the evidence to determine whether and how limited Plaintiff was as a result of all of her impairments. Notably, Judge Padilla appropriately found that the record as a whole did not contain the kind of evidence demonstrating disability as had existed in *Rogers* and *Preston*. The medical evidence of record reasonably provided a basis for Judge Padilla to determine that Plaintiff's impairments, including her fibromyalgia, were not so severe as to be disabling.

In contrast to Dr. Rorrer's opinion, the reviewing physicians of record determined that Plaintiff is not disabled. (Tr. 234-39). More importantly, however, Plaintiff's own reports reveal that she engages in a very wide range of activities including cooking, cleaning up after her son, shopping, going for short walks, socializing with a friends, going out to eat, doing scrap booking, attending church twice a month, home schooling her daughter, taking her daughter horseback riding and to camp, driving, and going to the library, doing the dishes, cleaning the house and caring for her children. Those activities belie Plaintiff's allegations of total disability.

16

Case: 3:10-cv-00348-WHR-MRM Doc #: 11 Filed: 06/20/11 Page: 17 of 18  PAGEID #: 109

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Rorrer's opinion.

Plaintiff alleges next that the Commissioner erred by failing to consider her impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306 (6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the Plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge Padilla's opinion reveals that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 21, 23, 30, 33.  In addition, Judge Padilla specifically referred to Plaintiff's impairments in combination in finding that Plaintiff does not meet or equal the Listings. (Tr. 24, ¶ 4).

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v.*

17

*Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

June 20, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).